IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| MICHAEL LOTT, | Civil Action No. |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | |
| TRUIST FINANCIAL CORP., TRUIST SECURITIES, INC. (f/k/a SUNTRUST ROBINSON HUMPHREY, INC.), and TRUIST BANK, INC., | |
| Defendants. | |

## **COMPLAINT**

1.     Plaintiff Michael Lott ("Plaintiff), by and through his undersigned counsel, brings this action against Defendants Truist Financial Corporation ("TFC"), Truist Securities, Inc., formerly known as SunTrust Robinson Humphrey, Inc. ("TSI"), and Truist Bank, Inc. ("TBI") (collectively "Defendants") to obtain full and complete relief for Defendants' failure to pay overtime wages as required by the Fair Labor Standards Act, 29 U.S.C. § 201 et seq., ("FLSA").

## **JURISDICTION AND VENUE**

2.     The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331.

3.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(d) because the unlawful employment acts giving rise to this action were committed in the Atlanta Division of the United States District Court for the Northern District of Georgia.

## PARTIES

4.     Plaintiff is a citizen of the United States of America and a resident of the State of Georgia.

5.     Defendant TFC is a foreign corporation, but it has purposefully availed itself of the privilege of conducting business within the state of Georgia.

6.     TFC may be served with process by delivering a copy of the Summons and Complaint to its registered agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

7.     Defendant TSI is a foreign corporation, but it has a principal office address within the Atlanta Division, 3333 Peachtree Road, N.E. Atlanta, GA 30326, and it has purposefully availed itself of the privilege of conducting business within the state of Georgia.

8.     TSI may be served with process by delivering a copy of the Summons and Complaint to its registered agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

9.     Defendant TBI is a foreign corporation, but it has purposefully availed itself of the privilege of conducting business within the state of Georgia.

10.     TBI may be served with process by delivering a copy of the Summons and Complaint to its registered agent, Corporation Service Company, 2 Sun Court, Suite 400, Peachtree Corners, GA 30092.

11.     Defendants are governed by and subject to the FLSA.

12.     At all relevant times, Defendants were enterprises engaged in commerce or in the production of goods for commerce.

13.     At all relevant times, Defendants had at least two (2) employees engaged in interstate commerce or in handling, selling or otherwise working on goods or materials that have been moved in or produced for commerce.

14.     Defendants provide banking and investment services throughout the U.S.A.

15.     At all relevant times, Defendants had at least $500,000.00 in annual gross volume of sales made or business done.

16.     Defendants are the sixth largest bank in the U.S.A.

17.     At all relevant times, Defendants were Plaintiff's "employers" as that term is defined by 29 U.S.C. § 203(d).

18.     Plaintiff was employed by Defendants throughout the Relevant Time Period (i.e., May 15, 2018 to April 16, 2021).

19.     In July of 2017, Plaintiff started working for SunTrust Bank and its subsidiary SunTrust Robinson Humphrey, Inc.

20.     On information and belief, during the Relevant Time Period, SunTrust Bank merged with BB&T and subsequently formed Truist Bank, Inc., a wholly-owned subsidiary of Truist Financial Corporation.

21.     On information and belief, during the Relevant Time Period, SunTrust Robinson Humphrey, Inc. also became a wholly-owned subsidiary of Truist Financial Corporation and changed its name to Truist Securities, Inc.

22.     As a result of the merger, the name of the employer on Plaintiff's pay stubs changed to Truist Bank, Inc., but all other terms and conditions of Plaintiff's employment remained the same.

23.      Plaintiff performed the same job duties, worked at the same location, reported to the same managers, was compensated the same way, continued to work overtime without pay, etc.

24.     At all relevant times, Plaintiff was an "employee" of Defendants as that term is defined by 29 U.S.C. § 203(e).

25.     Defendants acted directly or indirectly in the capacity of an "employer" in relation to Plaintiff.

26.     Defendants determined the terms and conditions of Plaintiff's employment, including his job duties, work hours, compensation, exempt classification, etc.

## **STATEMENT OF FACTS**

27.     Plaintiff started working for Defendants on or around July 19, 2017.

28.    Plaintiff was hired as a Senior "IT Support Analyst" (also referred to as "IT Support Technician").

29.    Defendants misclassified Plaintiff as an exempt employee.

30.    At all relevant times, Plaintiff performed non-exempt work.

31.    As an IT Support Analyst/IT Support Technician, Plaintiff's primary job duties involved desktop support.

32.    Plaintiff spent most of his time troubleshooting straightforward software and hardware problems on behalf of end-users (i.e., employees). Those problems involved issues such as connecting to the network, connecting to the remote desktop, accessing files on shared networks, password lockout, sending/receiving emails, installing software and mobile applications, etc.

33.    A subject-matter expert was assigned to each software product.

34.    The subject-matter expert had full administrator rights to the software product (which Plaintiff did not).

35.    Plaintiff escalated complex issues to the appropriate subject-matter expert.

36.    If the subject-matter expert could not resolve the issue, then he/she escalated the issue to the next level of support, a Software Architect. If the Software Architect could not resolve the issue, then he/she escalated the issue to the next level of support, a Network Administrator.

37.    Plaintiff was scheduled to work from 7:00 a.m. to 4:00 p.m. with a one-hour lunch break, Monday through Friday, and to work on-call every fifth week from 6:00 p.m. to 11:00 p.m., Monday through Friday, and from 10:00 a.m. to 10:00 p.m. on Saturday and Sunday.

38.    Plaintiff consistently worked longer than his scheduled hours.

39.    Plaintiff typically started work around 6:30 a.m. and typically finished work between 4:30 p.m. and 5:30 p.m., Monday through Friday, and Plaintiff worked through his lunch breaks two days a week (at least).[1]

40.    Defendants knew or should have known that Plaintiff consistently worked more than 40 hours in a week.

41.    Plaintiff resolved "trouble" tickets before and after his scheduled hours, and Plaintiff communicated with management before and after his scheduled hours.

42.    Defendants reported that Plaintiff worked 86.67 hours each bi-monthly pay period on Plaintiff's paystubs.

43.    Defendants paid Plaintiff a salary for 86.67 hours per bi-monthly pay period.

44.    Plaintiff was not paid for any time spent working over 40 hours in a week.

45.    In lieu of cash overtime, Defendants gave Plaintiff eight hours (i.e., one day) of compensatory time off during the workweeks following his on-call workweeks.

---

[1] Accordingly, Plaintiff worked approximately 49.5 hours during those workweeks when he did not work on-call, and approximately 98.5 hours during those workweeks when he did work on-call.

46.     Plaintiff could not engage in ordinary, personal activities during his on-call shifts.

47.     Plaintiff typically received two to three "trouble" calls every hour during his on-call shifts.

48.     Defendants failed to keep an accurate record of Plaintiff's actual work hours in violation of the FLSA's recordkeeping requirements.

49.     Defendants knew that Plaintiff was a non-exempt employee and entitled to overtime pay.

50.     Plaintiff (and his colleagues) repeatedly complained to management about the lack of overtime pay.

51.     Plaintiff (and his colleagues) informed management that a former worker who performed the same or similar duties had successfully sued Defendants for unpaid overtime.

52.     In response, Management claimed that Plaintiff was not eligible for overtime pay.

53.     In March of 2017, Defendants were sued for unpaid overtime by former Senior IT Analyst Roberta Geraldo. See Roberta Geraldo v. SunTrust Robinson Humphrey, Inc. et al., Case No. 1:17-cv-00509-ODE (N.D. Ga. March 23, 2017).

54.     Ms. Geraldo performed the same or similar duties as Plaintiff. See id. at Dkt. No. [1] at ¶ 38.

55.    Ms. Geraldo met the compensation test under the "computer professional" exemption. See 29 C.F.R. § 541.400(b).

56.    Ms. Geraldo was paid either on a salary basis at a rate not less than $455.00 per week, or on an hourly basis at a rate not less than $27.63 per hour. See Geraldo, Case No. 17:cv-00509-ODE at Dkt. Nos. [1] at ¶ 26, and [16] at ¶ 26.

57.    Defendants settled that dispute and provided "fair compensation" to Ms. Geraldo. See id. at Dkt. No. [22].

## COUNT ONE
## Fair Labor Standards Act
## Failure to Pay Overtime

58.    Plaintiff reasserts and incorporates by reference Paragraphs 4 through 57 of this Complaint as if fully set forth herein.

59.    Defendants violated the FLSA by failing to pay Plaintiff overtime.

60.    During the Relevant Time Period, Plaintiff worked more than 40 hours in a week.

61.    During the Relevant Time Period, Plaintiff was not paid the cash overtime premium for any hours worked over 40 in a week.

62.    During the Relevant Time Period, Plaintiff was misclassified as an exempt employee.

63.    During the Relevant Time Period, Plaintiff's primary duty included non-exempt work—troubleshooting straightforward software and hardware problems.

**Willfulness**

64.     Defendants willfully disregarded their obligations under the FLSA and, therefore, the statute of limitations period should be extended from two years to three years.

65.     Defendants knew or should have known that Plaintiff was a non-exempt employee and was entitled to be paid overtime.

66.     Plaintiff functioned in the role of desktop support.

67.     Plaintiff was required to escalate complex issues to the appropriate subject-matter expert.

68.     Defendants had been sued for violating the FLSA's overtime pay requirements by (at least) one former employee who did the same or similar job duties as Plaintiff.

69.     Plaintiff (and his colleagues) repeatedly complained to management about the lack of overtime pay.

70.     In response, Defendants falsely informed Plaintiff that he was not eligible for overtime pay.

71.     Defendants knew that Plaintiff worked more than 40 hours in a week.

72.     Defendants scheduled Plaintiff to work more than 40 hours in a week.

73.     In lieu of paying the cash overtime premium, Defendants gave Plaintiff compensatory time off for some overtime hours.

74.    Defendants failed to keep an accurate record of Plaintiff's actual work hours.

**Damages**

75.    As a result of Defendants' unlawful conduct, Plaintiff is entitled to recover his actual unpaid overtime wages, an equivalent amount as liquidated damages, and his attorneys' fees and costs.[2]

76.    For 2018, Plaintiff estimates that he is owed approximately $26,298.68 in actual unpaid overtime wages.[3]

77.    For 2019, Plaintiff estimates that he is owed approximately $42,443.16 in actual unpaid overtime wages.[4]

78.    For 2020, Plaintiff estimates that he is owed approximately $45,393.84 in actual unpaid overtime wages.[5]

79.    For 2021, Plaintiff estimates that he is owed approximately $13,880.37 in actual unpaid overtime wages.[6]

---

[2] Plaintiff's initial estimate of damages is based on the limited information available at this time. Plaintiff reserves the right to re-calculate his damages after discovery.

[3] ($52.65 [OT Rate] x 9.5 [OT Hrs.] x 21 [Wks.]) + ($52.65 [OT Rate] x 48.5 [OT Hrs.] x 6 [Wks.]) + ($52.65 [OT Rate] x 1.5 [OT Hrs.] x 6 [Wks.]).

[4] ($52.79 [OT Rate] x 9.5 [OT Hrs.] x 32 [Wks.]) + ($52.79 [OT Rate] x 48.5 [OT Hrs.] x 10 [Wks.]) + ($52.79 [OT Rate] x 1.5 [OT Hrs.] x 10 [Wks.]).

[5] ($56.46 [OT Rate] x 9.5 [OT Hrs.] x 32 [Wks.]) + ($56.46 [OT Rate] x 48.5 [OT Hrs.] x 10 [Wks.]) + ($56.46 [OT Rate] x 1.5 [OT Hrs.] x 10 [Wks.]).

[6] ($58.94 [OT Rate] x 9.5 [OT Hrs.] x 9 [Wks.]) + ($58.94 [OT Rate] x 48.5 [OT Hrs.] x 3 [Wks.]) + ($58.94 [OT Rate] x 1.5 [OT Hrs.] x 3 [Wks.]).

80.    Accordingly, Plaintiff is entitled to recover unpaid overtime wages in the approximate amount of $128,016.05, liquidated damages in the approximate amount of $128,016.05, and his attorneys' fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays for relief as follows:

A. For a trial by jury;

B. For a finding that Defendants violated Plaintiff's rights as set forth herein;

C. For a judgment in Plaintiff's favor for unpaid overtime wages, an equivalent amount as liquidated damages, prejudgment interest on unpaid wages, reasonable attorneys' fees and costs in accordance with the FLSA, 29 U.S.C. § 216, and all other legal and equitable relief as may be appropriate to effectuate the purposes of the FLSA;

D. For a declaratory judgment that Defendants failed to keep an accurate record of Plaintiff's work hours in violation of the FLSA's recordkeeping requirements; and

E. For such other and further relief as this Court deems proper and just.

Date: May 15, 2021

Respectfully submitted,

SMITH LAW, LLC

By:    /s/ Louise N. Smith
       Louise N. Smith

11

Georgia Bar No. 131876
William J. Smith
Georgia Bar No. 710280
*Attorneys for Plaintiff*

3611 Braselton Highway
Suite 202
Dacula, GA 30019
T: (678) 889-8898
F: (844) 828-5615
louise@smithlaw-llc.com
william@smithlaw-llc.com

## DEMAND FOR JURY TRIAL

Pursuant to Fed.R.Civ.P. 38(b), Plaintiff demands a trial by jury.

By:   /s/ Louise N. Smith
      Louise N. Smith
      Georgia Bar No. 131876
      *Attorney for Plaintiff*

## FONT AND POINT CERTIFICATION

The undersigned counsel for Plaintiff hereby certifies that the within and foregoing **COMPLAINT** was prepared using Times New Roman, 14-point font in accordance with LR 5.1(B).

This 15th day of May 2021.

Respectfully submitted,

By:   /s/ Louise N. Smith
      Louise N. Smith
      Georgia Bar No. 131876
      *Attorney for Plaintiff*

12

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of May 2021, I have caused or will cause service to issue upon the Defendant to this Action with the foregoing **COMPLAINT** by personal service pursuant to Fed. R. Civ. P. 4. within the time allowed by Fed. R. Civ. P. 4(m).

Respectfully submitted,

By:   /s/ Louise N. Smith
Louise N. Smith
Georgia Bar No. 131876
*Attorney for Plaintiff*
